UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH G. DUNBAR,

    Plaintiff,

                              CASE NO. 1:11-CV-10123-DT
  v.                            JUDGE THOMAS L. LUDDINGTON
                              MAGISTRATE JUDGE PAUL KOMIVES

PATRICIA CARUSO, et al.,

    Defendants.
    _____/

**REPORT AND RECOMMENDATION ON:**
**(1) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (docket #2);**
**(2) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (docket #16);**
**(3) PLAINTIFF'S MOTION FOR TRANSFER TO FEDERAL PRISON (docket #20);**
**and (4) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #17)**

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Summary Judgment, Dismissal, and More Definite Statement* . . . . . . . . . . . . . . . . . . . . . . 4
           1.    *Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
           2.    *Summary Dismissal and More Definite Statement* . . . . . . . . . . . . . . . . . . . . . . . . . 5
                a. Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
                b. Claims Subject to Summary Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
                c. Claims Not Subject to Summary Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      C.    *Injunctive Relief* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\*    \*    \*    \*    \*

I.     RECOMMENDATION: Because it is difficult to discern all the claims plaintiff is raising in his complaint and amended complaint as well as the factual allegations related to those claims and the various defendants, the Court should deny the parties' cross-motions for summary judgment (docket #16 and #17) as premature. Rather, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court should summarily dismiss plaintiff's claims: (a) against defendants Caruso, Bergh, and Freese; (b) alleging denial of his choice of cellmate; (c) alleging false misconduct tickets; (d) alleging false

information in his prison file; and (e) alleging denial of Hepatitis immunizations. Pursuant to FED. R. CIV. P. 12(e), the Court should order plaintiff to file a more definite statement, within a specified time, in the form of an amended complaint, with respect to his claims alleging: (a) assault by prisoners and guards; (b) denial of or interference with his legal mail; (c) denial of a prison job based on race; and (d) retaliation. Finally, the Court should deny plaintiff's motions for preliminary injunction and for transfer to a federal facility (docket #2 and #20).

II.     REPORT:

A.      *Procedural Background*

Plaintiff Joseph G. Dunbar is a state prisoner currently confined in the Richard A. Handlon Correctional Facility in Ionia, Michigan. At the times relevant to plaintiff's complaint, he was incarcerated at the Thumb Correctional Facility in Lapeer, Michigan. Plaintiff commenced this action on January 10, 2011, by filing a *pro se* civil rights action pursuant to 42 U.S.C. §§ 1981, 1983. Defendants are Patricia Caruso, former Director of the Michigan Department of Corrections (MDOC); David Bergh, Warden of the Thumb Correctional Facility; Resident Unit Officer (RUO) Kelly Freese; Jeff Van Sickle, Classification Director at Thumb Correctional Facility; and Resident Unit Manager (RUM) Geraldine Wilson.

Although not entirely clear, plaintiff's complaint appears to raise the following claims. First, plaintiff contends that he has been denied cellmate changes afforded other inmates pursuant to MDOC Policy Directive 03.03.130(J). More specifically with respect to this claim, plaintiff contends that defendants have housed him with various "snitches" or government "plants," and that his various cellmates were unhygienic, snored, or otherwise undesireable as cellmates. Plaintiff also contends that at least one cellmate threatened him, yet defendants did not transfer him. Second,

plaintiff contends that he was discriminated against on the basis of race in the assignment of a job in the prison law library. Third, plaintiff contends that he was issued several false misconduct tickets by various prison officials. On February 8, 2011, plaintiff filed an amended complaint asserting additional claims.[1] Plaintiff's amended complaint reasserts some of his original claims, and asserts several additional claims. Specifically, in his amended complaint plaintiff alleges that: (1) defendants planted false information in his prison file that he had escaped from a mental institution, had an arson history, and had two prior rape convictions; (2) MDOC officials had him assaulted in retaliation for his lawsuit; (3) MDOC officials opened and read his outgoing and incoming legal mail; (4) he was issued additional false misconduct tickets; (4) he was not provided Hepatitis immunizations; and (5) MDOC officials have stolen his mail.

Currently pending before the Court are several motions filed by the parties. First, on January 10, 2011, plaintiff filed a motion for preliminary injunction, seeking release from segregation, transfer to a federal correctional facility, placement in a law library clerk position, and an order prohibiting guards from harassing him or using racial slurs. Second, on March 22, 2011, plaintiff filed a motion for summary judgment. Third, on May 20, 2011, plaintiff filed a motion for transfer to a federal prison or correctional facility. Defendants filed a combined response to these motions on June 23, 2011, and plaintiff filed a reply on June 30, 2011. Also pending before the Court is defendants' motion for summary judgment, filed on April 1, 2011. Defendants argue that: (1) plaintiff cannot show that defendants Caruso, Bergh, and Freese were personally involved in the alleged constitutional violations; (2) plaintiff's claims fail as a matter of law; and (3) they are

---

[1] Plaintiff filed his amended complaint along with a motion for leave to file the amended complaint. As explained in a separate Order issued this date, because defendants had yet to file a responsive pleading, plaintiff did not require leave of Court to amend the complaint. Thus, the amended complaint is properly before the Court.

entitled to summary judgment. Defendants' motion, however, addresses only the claims asserted in the original complaint; it does not address any of the claims in plaintiff's amended complaint. Plaintiff filed a response to this motion on April 12, 2011.[2]

For the reasons explained below, an analysis of the parties' summary judgment motions is complicated by the fact that it is difficult to discern precisely what claims plaintiff is alleging. Further, the parties' motions do not address any of the claims asserted in the amended complaint. For this reason, the Court should deny without prejudice the parties' motions for summary judgment. Instead, the Court should *sua sponte* dismiss some claims for failure to state a claim upon which relief may granted pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii), and with respect to the claims which are not subject to *sua sponte* dismissal, the Court should order plaintiff to provide a more definite statement, in the form of an amended complaint, pursuant to FED. R. CIV. P. 12(e). Finally, the Court should deny plaintiffs' motions for injunctive relief and transfer.

B.     *Summary Judgment, Dismissal, and More Definite Statement*

   1.     *Summary Judgment*

As noted above, it is difficult to discern the precise bases of plaintiff's claims, and precisely what those claims are. For example, defendants read plaintiff's complaint as asserting primarily retaliation claims. Although such claims could be inferred from the complaint, plaintiff does not use the word retaliation, or any similar words to describe his claims, other than in his allegation in the amended complaint that he was assaulted in retaliation for filing this suit. Given the difficulty in discerning plaintiff's claims, the fact that defendant reads the complaint as asserting different claims than I do, and the fact that neither parties' motion addresses the claims raised in plaintiff's amended

---

[2]Additional motions filed by the parties are addressed in separate Orders entered this date.

complaint, the better course is to deny the parties' motions for summary judgment without prejudice as premature, and to consider whether any of the claims asserted against defendants are subject to *sua sponte* dismissal, while providing plaintiff an opportunity to re-plead any claims not subject to summary dismissal.

2. *Summary Dismissal and More Definite Statement*

Although plaintiff's complaint is insufficiently definite to permit a proper summary judgment analysis, as noted above a number of potential claims can be discerned from the complaint. With respect to these potential claims, it is appropriate to consider whether the claims might plausibly be pleaded in an amended complaint, and thus to consider whether the claims are subject to summary dismissal or whether plaintiff should be permitted to file an amended complaint properly asserting these claims. In making this assessment, as noted above I read plaintiff's complaint and amended complaint as potentially raising the following claims: (1) denial of choice of cellmates; (2) denial of a prison job based on race; (3) issuance of false misconduct tickets; (4) maintenance of false information in his prison file; (5) opening and reading of his legal mail and interference with his regular mail; (6) denial of Hepatitis immunizations; (7) assault by prisoners and/or guards; and (8) retaliation.

*a. Legal Standards*

The *in forma pauperis* statute, pursuant to which plaintiff is proceeding, provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (ii) fails to state a claim on which relieve may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(b)(ii)-(iii). Where an *in forma pauperis* complaint fails

to state a claim, dismissal under § 1915(e)(2)(b) is mandatory. *See Bilal v. Driver*, 251 F.3d 1346, 1348 (11th Cir. 2001); *Rogler v. United States Dep't of Health & Human Servs.*, 620 F. Supp. 2d 123, 128 (D.D.C. 2009); *Johnson v. U.K. Government*, 608 F. Supp. 2d 291, 293 (D. Conn. 2009); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(e) of the Federal Rules of Civil Procedure provides that the Court may order a more definite statement if a pleading is "so vague or ambiguous that a party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). As with all the Rules, Rule 12(e) is to "be construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. As the plain language of the Rule indicates, a motion for more definitive statement is not appropriate solely to require a plaintiff to plead additional facts or claims; rather, a motion for more definite statement is appropriate only where the complaint is so unintelligible that the defendant is unable, in good faith, to answer the allegations in the complaint. In assessing whether the complaint is sufficient, the Court must be guided by Rule 8(a), which requires nothing more than a "'short and plain statement of the claims' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting FED. R. CIV. P. 8(a)); *see Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 644 (D. Minn. 1996); *Bentacourt v. Marine Cargo Management, Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996). Further, it is well established that a *pro se* complaint is entitled to a generous construction. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("handwritten *pro se* document is to be liberally construed"); *Lyons v. Powell*, 838 F.2d 28, 31 (1st Cir. 1988). "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal

pleadings drafted by lawyers.'" *Estelle*, 429 U.S. at 106 (quoting *Haines*, 404 U.S. at 520); *see also, Hughes v. Rowe*, 449 U.S. 5, 9-10 & n.7 (1980) (per curiam). In resolving a motion for more definite statement filed with respect to a *pro se* complaint, the Court is guided by this principle in addition to the liberal pleading requirement of Rule 8(a). *See Hankins v. Allstate Ins. Co.*, No. 3:96-CV-0089G, 1997 WL 278125, at *1 (N.D. Tex. May 12, 1997); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 35 (S.D.N.Y. 1992). Although Rule 12(e) authorizes a party to file a motion for a more definite statement, it is well established that a court may order a more definite statement "on its own initiative." *Alston v. Parker*, 363 F.3d 229, 234 n.7 (3d Cir. 2004); *see also*, *Dumas v. Hurley Med. Ctr.*, No. 10-12661, 2011 WL 35407, at *1 (E.D. Mich. Jan. 5, 2011) (Cleland, J.); *Straker v. Metropolitan Transit Auth.*, 333 F. Supp. 2d 91, 103 (E.D.N.Y. 2004).

### b. Claims Subject to Summary Dismissal

After applying these legal standards, the Court should conclude that the following claims are subject to summary dismissal under § 1915(e)(2)(B)(ii).

<u>Claims Against Defendants Caruso, Bergh, and Freese:</u> First, it is clear that plaintiff's complaint fails to state a claim against defendants Caruso, Bergh, and Freese with respect to any of his claims. With respect to Caruso and Bergh, plaintiff does not allege that these defendants were in any way involved in any of the constitutional violations he asserts in the complaint. Rather, they are sued solely because they were the Director of the MDOC and the Warden of Thumb Correctional Facility. The Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz*

*v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). Because plaintiff's allegations against defendants Caruso and Bergh are limited to their supervisory role, petitioner has failed to establish

their personal involvement in the alleged deprivations of his rights..

Similarly, with respect to defendant Freese, as alleged by plaintiff Freese's only role was in denying grievances submitted by plaintiff regarding the incidents alleged in the complaint. These allegations fail to state a constitutional claim against defendant Freese under § 1983. Nothing in the Constitution requires a state to establish a prison grievance system, nor to investigate or respond to grievances submitted pursuant to prison policy. *See Carlton v. Jondreau*, 76 Fed. Appx. 642, 644 (6th Cir. 2003); *Miller v. Bock*, 55 Fed. Appx. 310, 311-12 (6th Cir. 2003); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Likewise, plaintiff had no constitutional right to have prison officials conduct an investigation of his allegations at his request. *See Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004). Accordingly, plaintiff's allegations fail to state a claim for relief against defendant Freese. Accordingly, the Court should dismiss *sua sponte* plaintiff's claims against defendants Caruso, Bergh, and Freese pursuant to § 1915(e)(2)(b)(ii).

<u>Denial of Choice of Cellmates:</u> Plaintiff alleges that he was denied his choice of cellmates in violation of MDOC Policy Directive 03.03.130(J), and that MDOC officials have housed him with various "snitches" or "plants." These claims fail as a matter of law. It is well established that "corrections officials retain broad discretion over the administration of prisons, including housing in general and cell assignments in particular." *Quick v. Mann*, 170 Fed. Appx. 588, 590 (10th Cir. 2006). For this reason, it is well established that a prisoner has no constitutional right to choose his cell mate. *See Murray v. Bledsoe*, ___ F.3d ___, ___, 2011 WL 2279428, at *1 (3d Cir. June 10, 2011) (per curiam); *Allen v. Figueroa*, No. 93-15848, 1995 WL 314704, at *7 (9th Cir. May 23, 1995) (per curiam); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (per curiam); *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984). This is so even if plaintiff's cellmates were "annoying,

offensive, strange, rude," or otherwise undesirable living companions. *Blue v. Knowlin*, No. 2:09-1629, 2009 WL 2843315, at *4 (D.S.C. Aug. 31, 2009). Accordingly, the Court should summarily dismiss these claims.

<u>False Misconduct Tickets:</u> Plaintiff next contends that he was issued false misconduct tickets, which resulted in him being placed in administrative segregation. These claims are subject to summary dismissal. "A prisoner has no constitutionally protected immunity from being falsely accused of misconduct. The prisoner only has a right to due process of law during the disciplinary proceedings against him concerning the allegedly false misconduct charges." *Riley v. Church*, 874 F. Supp. 765, 768 (E.D. Mich. 1994) (Gadola, J.) (citations omitted), *aff'd,* 81 F.3d 161 (6th Cir. 1996); *accord Cromer v. Dominguez*, 103 Fed. Appx. 570, 573 (6th Cir. 2004); *Jackson v. Hamlin*, 61 Fed. Appx. 131, 132 (6th Cir. 2003). Plaintiff does not allege that he was denied a fair hearing on the misconduct tickets. Nor has petitioner stated a due process claim based on his placement in administrative segregation. To show that his due process rights were violated plaintiff must show that his placement in segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff has made no allegations that his confinement in administrative segregation imposed any hardship on him significantly more restrictive than the normal incidents of prison confinement. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (placement in administrative segregation is generally not an atypical and significant hardship, even when such segregation has a substantial adverse impact on the prisoner); *see also*, *Neal v. District of Columbia*, 131 F.3d 172, 175 (D.C. Cir. 1998); *Holliman v. McAdorn*, No. 96 C 3701, 1997 WL 13704, at *2 (N.D. Ill. Jan. 8, 1997). Accordingly, the Court should summarily dismiss plaintiff's claims relating to the allegedly false misconduct

tickets.

  <u>False Information in Prison File:</u> Plaintiff also contends that prison officials have placed or maintained inaccurate information in his prison file. This allegation fails to state any constitutionally cognizable injury. To the extent plaintiff alleges that the inclusion of this information affects his qualification for certain prison programs, the Supreme Court has explained that "matters which adversely affect [a prisoner's] classification and qualification for institutional programs" raise "no legitimate statutory or constitutional entitlement sufficient to invoke due process." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). To the extent plaintiff claims that this information may be relied upon by the Michigan Parole Board to deny him parole at some future parole hearing, his claim "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin*, 515 U.S. at 487. To the extent that the Board relies on any inaccurate prison history, plaintiff will be entitled to seek relief through a petition for the writ of habeas corpus. Accordingly, the Court should summarily dismiss plaintiff's claim alleging false information in his prison file.

  <u>Failure to Provide Hepatitis Vaccination:</u> Plaintiff also alleges in his amended complaint that he did not receive the full course of immunizations for Hepatitis A and Hepatitis B. This claim fails to state a claim upon which relief may be granted. The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions

of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. Plaintiff's claims that defendants denied him medical care are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims have a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?--*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury--*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

Here, plaintiff's claim that he was denied part of his Hepatitis immunizations does not state an Eighth Amendment claim. First, a failure to vaccinate against a disease, without more, does not establish deliberate indifference. *See Wright v. Scott*, 31 Fed. Appx. 159, 159 (5th Cir. 2001). Second, and more fundamentally, plaintiff does not allege that he has contracted Hepatitis as a result of the prison officials' failure to provide the vaccinations, and thus he has not alleged that the prison officials' actions caused him any constitutionally cognizable harm. *See Bell v. Okuwobi*, No. 5:04-CV-18, 2006 WL 2356082, at *9 (M.D. Ga. Aug. 15, 2006); *Troutt v. Correctional Healthcare Mgmt., Inc.*, No. CIV-04-1750, 2006 WL 2372987, at *6 n.12 (W.D. Okla. Aug. 14, 2006); *Wood v. Idaho Dep't of Corrections*, 391 F. Supp. 2d 852, 866-67 (D. Idaho 2005), *aff'd*, 205 Fed. Appx. 599 (9th Cir. 2006). Accordingly, the Court should conclude that this claim is subject to summary dismissal.

### *c. Claims Not Subject to Summary Dismissal*

Plaintiff's complaint and amended complaint also raise several claims which, although not

properly pleaded at this stage, are claims which might properly be pleaded and not subject to summary dismissal. With respect to these claims, the Court should decline to summarily dismiss the claims, instead providing plaintiff with an opportunity to provide a more definite statement in the form of an amended complaint.

Assaults by Prisoners/Guards: Although it is not entirely clear, plaintiff's pleadings appear to allege that he was assaulted by another inmate and by prison guards. Such claims, if properly pleaded, may state a claim upon which relief may be granted. It is well-established that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners" and are "not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833. Thus, prison officials can be liable for an assault committed by another inmate if they know of and disregard an excessive risk to an inmate's safety. *See United States v. Lanham*, 617 F.3d 873, 885 (6th Cir. 2010); *Lyons v. Holden-Selby*, 729 F. Supp. 2d 914, 919-20 (E.D. Mich. 2010) (Rosen, J.). Further, it is well established that any use of force by a prison guard that is done maliciously for the purpose of inflicting harm, rather than as part of a good-faith effort to restore order, violates the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *cf. Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). Thus, these allegations are not subject to summary dismissal. However, because the allegations are conclusory statements of the assaults, with no further information provided apart from the alleged fact of the assault, defendants are entitled to a more definite statement under Rule 12(e) providing further factual allegations to enable defendants to respond to and the Court to evaluate this claim.

Legal Mail: Plaintiff also alleges that prison officials opened or otherwise interfered with his legal mail. In *Kensu v. Haigh*, 87 F.3d 172 (6th Cir. 1996), the Sixth Circuit noted that "the

14

sanctity of legal mail has long been recognized." *Id.* at 174. The court went on to note:

> Both the Supreme Court and this Circuit have repeatedly held that a prisoner has some First Amendment rights to receive mail, subject to the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security. That case law has also acknowledged that the opening of "legal mail" should generally be in the inmate's presence in accordance with appropriately drafted and uniformly applied regulations.

*Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Here, plaintiff may be able to properly allege a First Amendment claim based on defendants' handling of his legal mail. However, plaintiff's vague allegations are insufficient to allow defendants to properly respond to this claim, and thus a more definite statement is appropriate with respect to this claim.

Denial of a Job: Plaintiff also alleges that he was denied a job as a clerk in the prison law library because of his race. Specifically, defendants note in their motion for summary judgment that MDOC Policy Directive 05.01.100 requires that each job assignment maintain a racial composition that is within 10% of the institution's racial composition. *See* MDOC POLICY DIRECTIVE 05.01.100(U). This allegation states a claim upon which relief may be granted.

It is true that a prisoner has no "right to prison employment or a particular prison job." *Jewell v. Leroux*, 20 Fed. Appx. 375, 377 (6th Cir. 2001). It is equally true, however, that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Racial classification in the prison setting, like such classification outside the prison setting, is permissible only when it is narrowly tailored to serve a compelling state interest. *See Johnson v. California*, 543 U.S. 499, 505-15 (2005). Generally, while a prisoner has no constitutional right to a particular job, the Equal Protection Clause does prohibit prison officials from making work assignments based on

15

race. *See Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987); *Reynolds v. Barrett*, 741 F. Supp. 2d 416, 425 (W.D.N.Y. 2010); *Anthony v. Burkhart*, 28 F. Supp. 2d 1239, 1245 (M.D. Fla. 1998). Thus, plaintiff's allegation that he was denied a particular job solely on the basis of his race states a claim for relief.

Retaliation: Finally, plaintiff's complaint and amended complaint could be read as asserting that some of the actions allegedly taken against him were based on his prior grievances or litigation. To state a claim for retaliation, plaintiff must show that "(1) [he] engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Here, it is impossible to assess these elements, as plaintiff's complaint fails to tie particular actions to particular defendants or protected conduct on his part. Thus, a more definite statement in the form of an amended complaint is necessary to properly assess plaintiff's retaliation claims.

C.     *Injunctive Relief*

Also pending before the Court are plaintiff's motions for preliminary injunction and for transfer to a federal prison. The Court should deny these motions.

With respect to the latter request in particular, this Court is without authority to grant the relief requested. Although in extreme cases a federal court may order state officials to transfer a prisoner to a different facility to remedy a constitutional violation, such a power does not extend to order the state to transfer a prisoner to the federal prison system, or to requiring the federal prison system to accept the prisoner. "[W]hen a state has primary custodial jurisdiction over an inmate,

a federal court cannot order the delivery of the defendant for service of a sentence in a federal institution. Such an order would be tantamount to a transfer of custody beyond the jurisdiction of the federal court." *Fisher v. Goord*, 981 F. Supp. 140, 176 (S.D.N.Y. 1997); *see also*, *Moore v. Schuetzle*, 486 F. Supp. 2d 969, 981 (D.N.D. 2007). More generally, plaintiff's requests for transfer and injunctive relief are moot, in light of the fact that he is no longer incarcerated in the Thumb Correctional Facility, where the events alleged in the complaint occurred. It is well established that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *see also*, *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007) (citing cases from Second, Third, and Eighth Circuits); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Because plaintiff is no longer subject to the care of the official he claims was denying him his constitutional rights, his request for injunctive relief is moot. *See Candelaria v. Coughlin*, 787 F. Supp. 368, 378 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992). Accordingly, the Court should deny plaintiff's motions for preliminary injunction and for transfer to a federal correctional facility.

D.     *Conclusion*

In view of the foregoing, the Court should deny the parties' cross-motions for summary judgment as premature. Further, the Court should deny plaintiff's motions for preliminary injunction and for transfer to a federal facility. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court should summarily dismiss plaintiff's claims: (a) against defendants Caruso, Bergh, and Freese; (b) alleging denial of his choice of cellmate; (c) alleging false misconduct tickets; (d) alleging false information in his prison file; and (e) alleging denial of Hepatitis immunizations. Pursuant to FED. R. CIV. P. 12(e), the Court should order plaintiff to file a more definite statement, within a specified

17

time, in the form of an amended complaint, with respect to his claims alleging: (a) assault by prisoners and guards; (b) denial of or interference with his legal mail; (c) denial of a prison job based on race; and (d) retaliation. Plaintiff should be directed to file an amended complaint in compliance with Rule 8 of the Federal Rules of Civil Procedure properly setting forth these claims. Because plaintiff is proceeding *pro se*, and in the interest of "securing the just, speedy, and inexpensive determination of [this] action," FED. R. CIV. P. 1, the Court should advise plaintiff that his amended complaint should:

- contain a short, simple statement of the bases of this Court's jurisdiction, *i.e.*, the statutes or constitutional provisions upon which plaintiff's claims are based.

- contain a short, simple statement of the factual allegations which plaintiff claims entitles him to relief. These factual allegations should be in separately numbered paragraphs, and should identify the particular defendant(s) alleged to have engaged in the particular action.

- contain a short, simple demand for relief. This demand should identify with particularity the relief sought from each defendant.

- <u>not</u> contain quotations from legal sources. Plaintiff may identify legal theories upon which he bases his claims, so long as such does not interfere with the conciseness and clarity of their factual allegations. It is also noted that plaintiff is <u>not required</u> to plead any specific legal theories in his complaint; all that is required is a plain statement of his claims which would entitle him to relief under any cognizable legal theory.

- not re-allege those grounds for relief which the Court determines are subject to summary dismissal. However, plaintiff should be permitted to allege those grounds for relief reflected in his motions for leave to file supplemental pleadings which are not duplicative of the claims which are subject to summary dismissal.

Finally, the Court should advise plaintiff that failure to file an amended complaint in conformity with the Court's order may result in dismissal of the entire action. *See Giles v. Wal-Mart Distrib. Ctr.*, 359 Fed. Appx. 91, 93 (11th Cir. 2009); *Graves v. Clinton*, No. 2:10-cv-3156, 2011 WL 2470741, at *6 (E.D. Cal. June 20, 2011).

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 7/12/11

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 12, 2011.
>
> s/Eddrey Butts  
> Case Manager